SCHROEDER et ux. v. UNITED STATES.
No. 21078.

District Court, W. D. Washington, N. D.
Feb. 20, 1940.

Jones & Bronson, of Seattle, Wash., for plaintiffs.

J. Charles Dennis, U. S. Atty., Gerald Shucklin, Asst. U. S. Atty., and Thomas R. Winter, Sp. Atty. for Bureau of Internal

Revenue, all of Seattle, Wash., for defendant.

BLACK, District Judge.

The plaintiffs in this cause seek judgment against the defendant for $1,168.95 with interest and costs by virtue of an alleged overpayment of income tax which plaintiffs were required to make for the year 1932. Plaintiffs, as a marital community, acquired stock in the North Pacific Building Company, a corporation, consisting of 106½ shares, in June, 1927, and allege that such shares cost them $12,500. They further allege "that said shares became completely worthless and such worthlessness was ascertained and determined by the taxpayers and the said shares and their investment therein were abandoned and charged off by them upon their books within the calendar year 1932." Plaintiffs, in the first instance, in their joint income tax return for 1932 deducted from their income such alleged loss but the Commissioner of Internal Revenue of the United States disallowed such deduction. Plaintiffs thereupon paid same and filed their claim for refund. Thereafter, the Commissioner of Internal Revenue disallowed and rejected such claim and notified plaintiffs thereof.

The defendant denies that the stock involved represented any investment of plaintiffs and further contends that if any loss was sustained by the plaintiffs in connection with such stock that any such loss "was sustained in the year 1931 and prior years."

The evidence substantially established that the stock in question cost plaintiffs $12,500. The history of the investment is somewhat involved. However, the plaintiffs were out $12,500 in money and accepted the stock in lieu thereof. Unquestionably, until some time after they acquired the stock plaintiffs would never have been able to have claimed a loss of $12,500. The $12,500 represented by the stock is the amount of their investment therein.

The decisive question before the Court is, therefore, whether this stock became worthless in the year 1932 or at some other time.

The evidence shows that the only asset of the company in question was a building erected by virtue of a long-term ground lease, which ground lease became a substantial detriment. As a result the building was a losing venture and before the close of 1930 had become worth substantially less than the aggregate of the two mortgages. Foreclosure was instituted as to both. Before 1931 the property under the second mortgage had been sold at sheriff's sale and by 1931 the redemption year had expired. Sheriff's deed issued in May, 1931. The period of redemption as to the first mortgage by reason of delays in prosecuting the foreclosure thereof did not expire until the year 1933. The aggregate of the amounts due under the first and second mortgages substantially exceeded $400,000.

The North Pacific Building Company had not had possession of the building since the institution of foreclosure proceedings in 1929. By 1931 the first mortgagee had secured the interest of the second mortgagee, which had surrendered same to the first mortgagee without any consideration from the first mortgagee and, in fact, upon a considerable payment by the second mortgagee to the first for release of certain liabilities arising apparently while the second mortgagee was in possession of the premises.

In 1931 a representative of the first mortgagee, without committing himself or the first mortgagee, advised plaintiffs that he would recommend that the first mortgagee accept $300,000 or thereabouts for all claims under the first and second mortgages. The plaintiff husband, who was an officer of the North Pacific Building Company, testified that during the latter part of 1931 and the first few weeks of 1932 he hoped to be able to borrow the necessary amount from a party in Chicago; that he made efforts so to do; that he learned early in 1932 that such efforts would be unsuccessful, and thereupon in 1932 for the first time ascertained that the shares of stock were completely worthless and in 1932 charged same off upon plaintiffs' books. The income tax returns for 1931 showed no such income as would have permitted plaintiffs to have deducted any substantial loss for the year 1931.

The plaintiffs in their brief conceded that "the existence of a technical right of redemption as to the first mortgage extending into 1933 created no value in and of itself."

In United States v. White Dental Co., 274 U.S. 398, 47 S.Ct. 598, 600, 71 L.Ed. 1120, the Court said: "The transaction evidencing the loss here was the seizure of the property of the German company. * * * and when effected left the corporation without right to demand its release or compensation for its seizure, at least until the declaration of peace. [Citing cases.]

What would ultimately come back to it, as the event proved, might be secured, not as a matter of right, but as a matter either of grace to the vanquished or exaction by the victor. * * * The quoted regulations, consistently with the statute, contemplate that a loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an eventual recoupment. It would require a high degree of optimism to discern in the seizure of enemy property by the German government in 1918 more than a remote hope of ultimate salvage from the wreck of the war. The taxing act does not require the taxpayer to be an incorrigible optimist."

Again in Royal Packing Co. v. Commissioner of Internal Revenue, 9 Cir., 22 F.2d 536, 538, the Court says: "A loss may be said to be actually sustained in a given year if, within that year, it reasonably appears that such stock has, in fact, become worthless. It is not requisite that there be a charge-off on the books of the taxpayer, and the ultimate fact of worthlessness may be shown by circumstances, as in other cases where that question is in issue."

Plaintiffs' reply brief concedes the correctness of the foregoing decisions but states that the "true issue before the Court * * * is whether the existence of hope of value in the stock owned by the plaintiffs based upon and combined with practical and definite possibilities of maintaining value in the stock existed until February, 1932."

The Court is forced to the conclusion that not only does the preponderance of the evidence fail to show that the decision of the taxing body was incorrect but, in fact, the preponderance of the evidence establishes that the stock was worthless at least by the year 1931. The issuance of the sheriff's deed in 1931 upon the expiration of the period of redemption as to the second mortgage fixed the loss by an identifiable event.

The most that the plaintiffs had under the evidence was an informal statement by a representative of the first mortgagee that he would recommend that approximately $300,000 be accepted. Such is strong evidence that the property at that time was not worth more than $300,000.

It may be that the plaintiffs hoped that the money could be borrowed, that the recommendation would be made, and that the property could subsequently be sold for more than $300,000, but certainly such a combination of uncertain hopes cannot be construed as being "practical and definite possibilities of maintaining value in the stock existing until February, 1932."

In United States v. White Dental Co., supra, as above, it is said: "The taxing act does not require the taxpayer to be an incorrigible optimist."

It may be further said that the Taxing Act does not permit the taxpayer to be such an incorrigible optimist as plaintiffs contend for. Plaintiffs did suffer a loss of $12,500 on the stock. But the Court is convinced that the preponderance of the evidence establishes that the loss was suffered in 1931. That loss cannot be deducted from plaintiffs' income of 1932.

Plaintiffs' action will be dismissed.